Good morning, Your Honors, and may it please the Court. Ian Gershengorn for Defendant Appellant, PeopleConnect. The decision below should be reversed for two independent reasons. First, the District Court held that a lawyer who has been retained to serve as counsel in a dispute lacks implied authority to agree to arbitration on his client's behalf and instead must have express authorization. But that was wrong. As this Court and the California Supreme Court has held, the usual rule is that agents have authority to enter into arbitration agreements on behalf of their principal. This Court said just that in Tamsco, an unpublished decision but one in which Judge McKeown was on the panel. And in Madden, the California Supreme Court held that an agent who agrees to arbitration today follows a, quote, proper and usual practice for affecting the purpose of the agency. We've had a lot of citation of unpublished opinions, and we've said they're not to be dismissed. But I guess we've let other people talk about unpublished opinions, so we'll let you, too. But I think we ought to consider that they are not, we do not consider them as a court on the same level as our published opinion. Absolutely, Your Honor. And we're not suggesting Tamsco is binding, but we think the reasoning is correct and it's consistent with Madden, which is a binding decision from the California Supreme Court since we're talking about California law. But the critical point, Your Honor, I think when we're talking about proper and usual practice, that's certainly true here. Because what plaintiffs sought to do was pursue a claim involving Classmates.com, and there her lawyer agreed to arbitrate while visiting the website to develop those claims. The district court based a contrary rule on its reading of Blanton, but Blanton did not categorically hold that implied authority is insufficient. Indeed, if it had done so, it would have been preempted by the Federal Arbitration Act. What Blanton held was that there is no implied authority to arbitrate where a complaint has already been filed, where the client has expressly stated that she wants a jury trial de novo, and where the arbitration agreement itself imposed a set of unusual substantive and procedural provisions that severely prejudiced the client's rights. None of those things are the case here. Second, even apart from applied authority, plaintiffs ratified her attorney's agreement. While visiting Classmates.com to develop plaintiff's claims, plaintiff's counsel gathered evidence he could only have obtained after agreeing to arbitrate. He then used that evidence in the complaint. When counsel's actions came to the fore, plaintiff doubled down, using the information again in response to — in an opposition to our motion to dismiss. Plaintiffs simply cannot pick and choose from their agent's agreements, retaining the benefits while disavowing the restrictions that made those benefits possible. Do you see any distinction in terms of an agent who is an attorney? So, Your Honor, I don't think so, and I — and no is the answer. And, in fact, if anything, agreeing to arbitration would seem more in the specific person — the specific purpose of what an agent is doing. But in any event, I think the test that comes out of Blanton is one that — is one that we would prevail under. We think, first of all, if I could step back for one sec, 2319 of the California Civil Code governs agency and says an agent has authority to do everything necessary or proper and usual in the ordinary course of business for affecting the purpose of the agency. And so there is no carve-out for attorneys there. And, second, what Blanton did was not create a broad carve-out for attorneys in arbitration. Indeed, how do you know that? Well, that's what Chief Justice Byrd wanted. That's what she said in her concurrence. She said, I think that an attorney should never be able to agree to arbitration for a client. And then she criticized the majority for not adopting that exact rule. And so to read Blanton, I think, as the district court did, is a — is a flat misreading. And, indeed, it would be inconsistent with Madden because what Madden said was that arbitration is, of course, a proper and usual thing for an agent to do. And we think on top of that, if that weren't enough, that — that it would violate the Federal Arbitration Act. And, indeed, if you read Blanton itself, it's pretty clear, right? Because what Blanton identifies as the consequences that affect substantial rights are the following. It says, of course, an attorney entered into an arbitration agreement. But then he said — then the court said, that agreement provided for the unilateral selection of an arbitrator by the defendant's attorneys from among attorneys whose practice consists primarily defending medical malpractice actions. And then it said — and it waived the right to recovery beyond $15,000. By any test, those are consequences which affected substantial rights of the client. Of course, none of that is true here. Indeed, plaintiff can recover. There's no limitation on the amount of damages she can recover, and there's no limitation on what claims she can bring. And so — Sotomayor, isn't a jury trial a substantial right generally afforded? So I think, Your Honor, that is not the substantial right within the meaning of what between the majority opinion in Blanton and what Chief Justice Byrd was seeking. And so I think the answer to that is no. And if there were any doubt about that, that's what exactly the Supreme Court said in Kindred. And that's what the Federal Arbitration Act cases are about. What arbitration is — and Madden says the same thing — it's a common, expeditious, and judicially favored method of review. That's the take of the California Supreme Court. That's the take of the Federal Arbitration Act. And that's the take of the U.S. Supreme Court. And so I think it's precisely that kind of hostility to arbitration, to view it as not a, as Madden said, common, expeditious, and judicially favored method of review, but as something that gives away substantial rights and that is precisely what the Supreme Court has been cautioning against and, I would say, precisely what Madden is all about. But Blanton really concerned arbitration specifically. Of course it did, Your Honor. Yeah. It was about — I'm sorry. Go ahead. Yeah. I mean, no. And so it said there's — essentially there's no implied authority to bind a client to an arbitration agreement. So I — that — if I'm respectful, Your Honor, that is exactly what I disagree with. That is what Chief Justice Byrd said. And what Chief Justice Byrd said in her concurrence, she said — and this is at 409 of the opinion — I write separately because the majority failed to set forth any guidelines as to when an attorney might act without the express consent of his or her client. Rather than providing clarity, the majority has introduced uncertainty. Further, the decision to waive the constitutional right to a trial by jury must always rest with the client, not the attorney. If that were the majority opinion in Blanton, we would be arguing only FAA preemption and we'd be in trouble. But the whole point of that was that was not what Blanton said. And the action — the key paragraph, Your Honor, is the one I read from 407. The test in Blanton is did the consequences affect substantial rights? And the majority did not hold that any time you waive a — that any time you agree to arbitration, that affects substantial rights. They held, one, that a complaint had already been filed. And under California law, in the Grafton case that we cite, that is a critical distinction because California — once you file a suit in California, you're governed by Section 631, which you are not pretrial. That's the entire point of Grafton. Second, the attorney there had said — the client there had said expressly she did not want to arbitrate, or at least that she wanted trial de novo afterwards. And third, the substantive provisions of the arbitration were extraordinary. It allowed defense counsel essentially to pick the arbitrators from among the other defense malpractice attorneys and cap damages at 15,000. Those things collectively, of course, affected the substantial rights of the client. But, no, I do not believe that Blanton could be read that way. And if the court — But Blanton does say that — well, I'll just read from Blanton — Yeah. — from the majority, an attorney merely by virtue of his employment as such has no apparent authority to bind his client to an agreement for arbitration. So a couple of things, Your Honor. First of all — I mean, you know that language, right? We agree with that. First of all, we're not arguing apparent authority. We're arguing implied authority. But second, more important, we agree with that statement that an attorney doesn't always have, just by virtue of her retention, the authority to agree to arbitration. That is not our point because we agree with Blanton that, for example, after a complaint is filed, the attorney can't agree to arbitration in the same way. We agree with Blanton that you can't agree to arbitration that is — that has substantive provisions that constrain your ability to recover in that major way. So we agree that it doesn't extend to every arbitration agreement. But here we're talking about pretrial with an agreement that doesn't prejudice substantial rights and in an agreement — and one where the client — where the client did not expressly say she wanted a trial de novo. And so with Your Honor, with respect, what I think also is so is that even if you read it the way Your Honor just did, we think there's more here, right? That there is not just an agreement to arbitrate, but that the attorney sent her client — the attorney sent her client off to investigate. Remember, the claims against our client involved the operation of a website, classmates.com. And so, of course, what the attorney did was what you would normally do in the course, which is hopped on the website to see what was going on there. And, of course, the attorney agreed to arbitrate. Well, that is proper and usual. I think we do that every single day. In my flight out here, when I rent a car, I agreed to arbitration. When I signed into the hotel, I agreed to arbitration. When I downloaded music for my flight from my app, I agreed to arbitration. The idea that — But the difference is you agreed. No, Your Honor, but the question — but the question — here's what — here's the question that TAMSCO and Uber, in this case, are wrestling with. When you send — when you send your agent out into the world, where you would be bound if you did it, and then what the agent does is do what you would normally do to investigate a claim here, that's exactly what proper and usual means. That's why the California statute says it that way. And so the idea that sort of — even if you took Judge Thomas's reading of Blanton, which, again, I disagree with — I know you disagree with me, so — Yeah, preempted. But if you took that, there is the more here, right? The person — the district court agreed with us that counsel's action on the website, quote, were clearly done in the course of counsel's representation of the plaintiffs for and anticipation of litigation, right? So the lawyer was doing exactly what the lawyer was supposed to do. And, again, it seems critical to me that what we're talking about here is the operation of a website. So what would the usual and proper thing to do? Hop on the website, and as all of us know, when you hop on a website, the first thing that comes up is, I agree. Now, sometimes, do you agree to the provisions of terms of service? And here, as in many, many, there was an arbitration agreement. And I think the district court reading of Blanton — and this is why I think the Federal Arbitration Act comes back in and really pushes back, again, respectfully, Your Honor, with your reading of Blanton. I was just reading from Blanton. I wasn't arguing with you, Your Honor. No, I understand, Your Honor. But that's a decision, candidly, from 35 years ago when maybe the California court's view of arbitration was not what the Supreme Court has said over and over in the three decades since then. It is, which is to say that arbitration itself is — and again, Madden said it — a common, expeditious, and judicially favored method for resolving disputes. And so, to read it against the backdrop of the FAA as carving out an express authorization requirement for attorneys, say Judge McEwen, or in general, we think really can't be sustained. I would like to just touch on ratification before I — I mean — I'm sorry, please go ahead. The reason I asked about attorneys is because there is a special relationship between attorney and client. Yeah. And it's one that doesn't exist with respect to agent and principal. There may be a fiduciary relationship there that — Yeah. — implied by law or explicitly by statute. But I just — intuitively, there seems to be a different relationship because of the attorney-client relationship. The way to handle that, Your Honor, is that I would adopt the language from Blanton. And so the question is, are there consequences that affected substantial rights of the client? That's the Blanton test. And we're comfortable with that test. What we're not comfortable, then, is — and again, I don't want to assign this to Judge Thomas because I know he's just reading from the opinion. But I think the crucial point is the mere agreement to arbitrate is not the — affecting substantial rights of the client. And Blanton doesn't hold that. What Blanton says, and this is at 407, where it says, by any test, these are consequences which affected the substantial rights. What it lists before that is arbitration, unilateral selection of the arbitrator by the defendant's attorneys, and then among attorneys who defend malpractice actions, and then it waived the right to any recovery beyond $15,000. So I think if Your Honor is looking for comfort that attorney-agents are different, it should — you should ground that in the Blanton test, and we meet that test. If I could — if the Court has no questions, I'd like to reserve the balance of my time for rebuttal. Thank you, Your Honor.  Good morning, Your Honors. May it please the Court, Benjamin Osborne for the plaintiffs' apologies in this case, Meredith Callahan and Lawrence Jeffrey Abraham. PeopleConnect would have you believe that the rule from Blanton that the district court applies favors arbitration over the judicial forum. It does not, and that's not what this appeal is about. This appeal is about respecting the instructions of a client and whether the attorney who has been hired by that client can undertake actions that are inconsistent with those instructions. Blanton says that when a client retains an attorney to pursue a cause of action in one forum, the attorney does not have implied authority — and implied authority is the theory on which PeopleConnect assert that there's an arbitration agreement with my clients in this case. But Blanton says the attorney does not have implied authority to enter an agreement that would switch that forum. This is from page 407 of Blanton. It says, quote, the client has a right to be consulted, and his consent obtained before the dispute is shifted to another and quite different forum. And if you look at the language of Blanton, that sentence exists on its own. It's not tied to whether the agreement would substantially impair the rights. It says you can't have an agreement to switch forums without the express consent of the client. And it's undisputed on the record here that when I visited the website, I did not have the consent of my clients to consent to pursue their claim in arbitration. In fact, they hired me to pursue a class action. That's only available in federal court. That would be precluded if we were subject to arbitration here. I therefore did not have implied authority to agree to arbitration on behalf of my clients. Now, had my clients retained me to pursue arbitration, right, the rule of Blanton and of other cases, by the way, from California courts, saying that an agent does not have implied authority to undertake actions inconsistent with the purpose for which they retained, had I been retained to pursue a claim in arbitration, I would not have had authority to enter an agreement to pursue it in a litigation forum. So this case really isn't about preferring one forum or another. It's about respecting a client's wishes, and it's about the scope of authority when a client delegates an attorney to pursue a claim. So that's the answer to their primary argument, which is about implied authority. I did not have implied authority to undertake an agreement that would keep my clients out of the forum they had chosen. Now, they have another argument that they asserted for the first time on appeal, which therefore should form no part of this court's decision. But in any case, I'll address it as if this court were to consider it. That's their argument that my clients ratified an arbitration agreement by accepting a, quote, benefit from PeopleConnect. Now, the primary problem with this argument is that ratification by acceptance of a benefit can exist only when two requirements, two additional requirements are met. First, and this is from, I believe this is from Alvarado, the client has to be aware of the existence of the agreement, and the client has to believe that she would not get the benefit that's being offered if she did not agree to that agreement. Now, in here, it's undisputed that my clients were not aware of any arbitration agreement. So they could not possibly have known that the arbitration agreement existed, and they couldn't have known that any supposed benefit that PeopleConnect claims was conveyed would have been contingent on that agreement. Again, there just was no agreement. And we promptly disaffirmed that agreement by filing an opposition in the district court below, disaffirming the existence of any arbitration agreement. And the second problem with the ratification argument is that there was no benefit conferred upon my clients at all. My clients had their names and likenesses exploited by a website to advertise a product. The claim of PeopleConnect is that by visiting that website and confirming that, in fact, my clients' names and likenesses had been exploited, taken without their permission, that they are somehow confirming a benefit upon me, that can't possibly be the correct read of the law. It is not a benefit to convey knowledge of the website's wrongdoing. Imagine it had been a physical object, and PeopleConnect had stolen something like a car and they'd set up a parking lot. And then they claim by me walking by the parking lot and seeing that, yes, my client's cars are there, they somehow conferred a benefit upon me when I used that evidence in a complaint filed on their behalf. That cannot possibly be right. And in fact, if you look at the case law that PeopleConnect cites, claiming that they provided some benefit, they don't have a single case that's anywhere close to analogous to what happened here. Everything they cite has to do with either a monetary benefit or something that is translatable into money. In most of the cases, the principal accepted a settlement, or they accepted the payment of defense costs, or in one case, this didn't involve attorney, the client accepted a car ride and knew that his brother had rented the car. Now, in this case, my clients have received absolutely nothing from classmates. In fact, what classmates, sorry, PeopleConnect, PeopleConnect owns Classmates.com, I sometimes use them interchangeably. But in this case, Classmates has attempted to push my clients out of the form they selected, which would impair their substantial rights, primarily it would make the claim uneconomic. The damages we're claiming here are $750 in statutory damages, it simply wouldn't be worth the time to go after it if this were not pursued in the form of a class action. So, let me just ask you kind of hypothetically, if you hadn't gone on the website, but now the question of representing a client is on the table, and what should we do? And then the client went on the website, would that mean that when you then brought your district court case, that the client had agreed to arbitration? If the client, I believe so, yes. I believe if the client had gone on the website for the purpose of investigating a claim, I can't think of a, possibly there's some law I'm not familiar with, those aren't the facts of this case. But had my client gone on the website herself to investigate, I honestly don't know, but those aren't the facts of the case. I understand that. That's what's called a hypothetical. That's what's called a hypothetical, and we're trying to explore, you know, what's, much has been made here. Well, there's no complaint filed yet. So I'm kind of putting you in that no complaint filed zone, which of course, it hadn't been at the time you went on there, and I was just asking, and if you don't know the answer, that's fine. If while you were thinking about whether to represent them and you were doing a little legal research, the client goes on there to, you know, see what else is on classmates, see if it's similar to her situation. My question was, would that mean all of a sudden that you would be, the client would be bound and couldn't bring a class action? I think it's an interesting question. I'd probably have to look at the terms of service and whether that terms of service says that you're bound when you use the service for the purpose of using the service rather than for the purpose of investigating a potential claim. I would have to read the terms of service to understand that question. Now as to whether the filing of the complaint is relevant, I understand opposing counsel put a lot of weight on that but didn't provide any reasons why when the complaint is filed should change the analysis. Now under Rule 11, I'm required to have a substantial basis for the facts that I put into a complaint. So in order to satisfy my Rule 11 obligations, and Judge Chen referenced this below, I couldn't have satisfied my Rule 11 obligations without visiting the website before filing the complaint. So it's really, he referred to it as a Hobson's choice. It's really between a rock and a hard place. I'm either waiving my client's first amendment rights to pursue redress, to pursue their grievances in a court of law, or I'm forced to violate my Rule 11 obligations to verify whether their property was in fact taken and exploited as indeed it was. Would you turn to the Federal Arbitration Act and its impact on this case? Absolutely. I think when you read Kindred in conjunction with the FAA and what Kindred said about FAA preemption, the rule of Kindred as I read it is you can't have a state law that picks out arbitration specifically for unique treatment. Now, respectfully, that's not what Blanton does, right? The right way to read Blanton is that it's about respecting a client's wishes, and as I said at the top of this analysis, have my clients instructed me or retain me for the purpose of pursuing arbitration. And under the rule of Blanton and related cases, some of which opposing counsel cited like Salyer's and another one called Garber, which we cited in our briefing, that says both of those cases stand for the proposition that an agent does not have implied authority to take actions outside the explicit instructions of their principle, right? Here, the instructions of my principle were, I want you to file a class action in court. That means I didn't have authority to agree to arbitration, not because it's arbitration. Blanton's not preferring the judicial form over arbitration. It's because it's not within the scope of the authority that my clients gave me. So, respectfully, I think Kindred doesn't apply. And even if Blanton did say that arbitration were—that it's relevant that the attorney was hired to pursue litigation, and agreeing to arbitration specifically in that context is the problem, you'll see that in Blanton, the Blanton decision is not picking on arbitration. It gives a whole host of agreements that an attorney is not authorized to enter implicitly by virtue of merely being retained. And it gives the example of agreeing to default judgment, agreeing to a lower judgment, agreeing to waive issues on appeal. So even Blanton, on its own terms, is not picking on arbitration, so to speak, in the way that Kindred said might result in FAA preemption. Any further questions? How far—it seems like what your position is that it depends upon how much authority is given to you by your client. Now, this is unknown to the other side that's being affected. How far does that go? It certainly wouldn't go so far as to say to the other people, I know you're right, and I'll go get your money for you. That would be a violation of your responsibilities to your client. But there's some area in there, if I understand you correctly, that—I mean, I was a trial lawyer before I was a judge, so I understand the problem, I think. But when you have this wiggle room, we have to have some way of saying, this is the rule, so the lawyers can say, this is the rule. How would you define that rule that gives you enough to do an investigation? And how much further would it be when you have taken responsibility on behalf of the client to do something that's favorable to the opposition? How would you—you be the judge, write the rule. Well, I think in this case there's a clear line to draw, which is the fact that I filed a complaint on behalf of my clients in court evidences that their intention was to hire me to file a complaint in federal court, right? And therefore, on the basis of that, I can't have—I'm sorry, is this addressing your question? I'm not sure I'm addressing it. I understand you've got to the merits of it, but how would the rule be read? How would it be written? The rule with respect to how much authority— Yeah, the generality of the rule, not the specific of the case. I think Blanton is the right place to look. It talks about impairing the substantial rights. Actually, it says two things. It says, one, you can't—just as a bright-line rule, you can't agree to switch forms on behalf of your client without express authorization. So that's one part of the rule. I would say when a client retains an attorney to pursue a cause of action in a specific form, that attorney does not have implied authority to agree to switch forms. Then you have the question of, okay, if that's not the case, what would the more general rule be? And there, I would refer to Blanton's reference to substantially impairing a client's rights. Now, that's not—it doesn't have the virtue of being a bright-line rule. You'd have to do some analysis, but Blanton gives some examples of the kinds of things that would cross the line. For example, agreeing to a lower—or agreeing to a default judgment, agreeing to waive issues on appeal, et cetera. And I would say those rules all make sense and should be part of the proper—the proper line to draw. That's helpful. I understand your argument better now. Thank you. Thank you. Thank you, Counsel. We'll hear rebuttal. Thank you, Your Honors. I'm going to make five quick points, and I'm going to cram them in first. This is not an express instruction case. If you look at our brief reply at page 14, there is literally zero in the record to support the assertion that the client retained counsel to file in federal court or to—for a class action. That isn't in the record. Second, they argued that they promptly disavowed the agreement once it was seen. That's the problem, not the solution. You cannot disavow the agreement while keeping the information. Did they keep the information? Absolutely. It was not just the identity. It was screenshots showing the relation between plaintiff's image and advertisements. If you look at ER-61, they used it to support their 230 claim. If you look at ER-65, they used it to support their copyright claim. And if you look at ER-57, they used it to frame up the advertising claim. So they used it. There was a question about timing and the significance of filing a complaint. I urge the Court, as I said earlier, to read Grafton, which I know the Court has. The whole point there is timing of arbitration agreements. Fourth, the counsel referenced Rule 11. That is a complete red herring here. There was an opt-out provision. Counsel could have gone on, done whatever he felt he needed to do, and then opted out of arbitration for 30 days. And then, I guess, finally, in closing, I want to end with Judge McKeown's question. Yes, absolutely, the client would have been bound if she had agreed to arbitration. There's no question about that. And our point is, you can't then send your agent out to do exactly what you would have done and avoid the binding nature while keeping the agreement. And that, it seems to us, is a very clear statement. If I could make just one final point, because I think it wraps it all together. We do think the right way to think about this is that Rule — this goes to Judge Wallace's question — Rule 20 — Section 2319 sets the right test with the idea that Blanton carves out except when it affects substantial rights. And the one thing we would say is, it is clear that merely agreeing to arbitration is not substantial rights under California case law and under the FAA. Thank you, counsel. Thank both of you for your arguments today. The case has started. It will be submitted for decision. And thank you for keeping your masks on when not at the podium. We greatly appreciate it, and it's certainly great to have lawyers back in the courtroom. This is the first time in two years this week that we've had live arguments, and we enjoyed that. Yes. The difficulty is they get a look at us now, and they may petition to put the masks back on. We're too frightening up here.
judges: WALLACE, THOMAS, McKEOWN